***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Taylor and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with the modification that plaintiff's entitlement to temporary total disability begins on October 2, 2000.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 *********** STIPULATIONS
1. At all relevant times, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, with defendant-employer regularly employing three or more persons.
2. At the time of the alleged accident or specific traumatic incident giving rise to this case, an employee-employer relationship existed between plaintiff and defendant-employer.
3. Defendant-employer is a duly qualified self-insurer with claims being administered by Allied Claims Administration, Inc.
4. Plaintiff's average weekly wage at the time of the alleged injury was $712.00, yielding a compensation rate of $474.67.
5. The depositions of Daljit Buttar, M. D., Scott M. McCloskey, M. D., J. Perry Fidler, D.C. and Ms. Betty Louise Greene are a part of the evidentiary record in this matter.
6. The parties stipulated into evidence the following documents:
• Stipulated Exhibit 1 — Lost work time information;
• Stipulated Exhibit 2 — I.C. Form 22;
• Stipulated Exhibit 3 — Wage information;
• Stipulated Exhibit 4 — Accident report;
• Stipulated Exhibit 5 — Allied Claims letter;
• Stipulated Exhibit 6 — 1998 Leave records;
• Stipulated Exhibit 7 — 1999 Leave records;
• Stipulated Exhibit 8 — March 24, 1999 letter;
 • Stipulated Exhibit 9 — Selected Industrial Commission forms; and
• Stipulated Exhibit 10 — Plaintiff's medical records.
 ***********
Based upon the findings of fact found by the Deputy Commissioner and the evidence of record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner in this matter, plaintiff was a 36 year old female, born February 19, 1965. Plaintiff has a B.S. in Nursing and became a registered nurse in 1994. Plaintiff began her nursing career at Blowing Rock Hospital where she worked for six weeks and then transferred to the Watauga Medical Center operating room where she worked for one year. Thereafter, plaintiff returned to Blowing Rock Hospital and was employed there on November 2, 1998 working as a second floor supervisor and as a registered nurse for the emergency room.
2. On November 2, 1998, plaintiff, as was her habit, was working the 7:00 p.m. to 7:00 a.m. shift. At approximately 2:00 a.m., one of the long-term care patients wondered outside her room and collapsed in the hall. After they stabilized the patient's breathing, plaintiff, another registered nurse, Rachel Brooks, and two nursing assistants attempted to lift the patient from the floor to a gurney. As they were lifting the patient, plaintiff felt a catch, pain and weakness in her left lower back. Plaintiff's initial pain subsided and she continued to focus on the patient. However, plaintiff continued to feel weakness and the pain eventually increased. That evening plaintiff and Rachel Brooks spent the rest of the shift working with a critical patient in the emergency room.
3. The morning following the lifting incident as plaintiff was ending her shift, she reported to Betty Greene, the nurse manager, that she had hurt her back lifting a patient off the floor. Within a couple of days, plaintiff began to have recurring pain and stiffness in her left lower back. On November 6, 1998, plaintiff presented to the office of her family physician, Dr. Juan DeVergiliis. Dr. DeVergiliis was out of town and plaintiff was seen by his family nurse practitioner, who diagnosed plaintiff with a lumbar strain and prescribed medication.
4. Plaintiff continued to experience pain and on November 12, 1998 presented to Dr. Fidler, a chiropractor. Plaintiff complained of low back pain with a pinching feeling when she moved with occasional tingling and radiation through the leg. Plaintiff indicated that her pain was caused by lifting a patient from the floor while at work and that the pain had worsened two days later while placing a blanket on a bed at home. Plaintiff continued to treat with Dr. Fidler, who on November 18, 1998 cut plaintiff's work hours and instructed her to work light duty with no lifting or turning of patients. Plaintiff treated with Dr. Fidler from November 12, 1998 through December 7, 1999. During that time plaintiff had bilateral radiation of pain into both lower extremities but the right more than the left. Between June 1999 and October 1999, plaintiff did not visit Dr. Fidler. When she returned in the Fall of 1999, plaintiff's condition was worse than it had been in June 1999 and about the same as it had been when she initially presented to him.
5. Dr. Fidler is of the opinion that plaintiff's November 2, 1998 incident while lifting the patient caused plaintiff's condition for which he treated her from November 12, 1998 through December 7, 1999.
6. Following the November 2, 1998 lifting incident, within one week, plaintiff filled out an accident report which she gave to Betty Greene, the nurse supervisor, to review and then presented to Susan Wagoman who handled workers' compensation matters for defendant-employer.
7. While under Dr. Fidler's care, plaintiff worked some light duty, part-time work but felt pressure to return to full-time work, as defendant-employer was short handed. Plaintiff worked her full-time regular job for defendant-employer earning the same wages as those she was earning on November 2, 1998 from early January 1999 through April 7, 1999. However, during that time plaintiff was visibly in pain as she worked and did not engage in the normal lifting of patients.
8. Effective April 7, 1999, plaintiff resigned from defendant-employer due to relocating to Lenoir. Plaintiff's resignation from defendant-employer was not due to her back condition but due to buying a home in Lenoir. When plaintiff relocated to Lenoir, she became employed with Total Care, Inc. as a home health nurse. Plaintiff earned $18.75 to $25.00 per hour, which is greater than the wage which she earned with defendant-employer on November 2, 1998. Plaintiff continued to have back pain, and Total Care, Inc. helped to adjust her workload to accommodate her stated complaints. Following plaintiff's relocation to Lenoir, she saw Dr. Fidler less frequently and did not see him at all from July 11, 1999 through October 5, 1999.
9. In August 1999, plaintiff married Greg Smith and relocated to Raleigh in September 1999.
10. Plaintiff's workers' compensation claim for the incident of November 2, 1998 was denied by defendant-employer and defendant-carrier in December 1998. At no time did defendant refer plaintiff for any medical treatment or seek to direct her treatment.
11. In the Fall of 1999 following plaintiff's move to Raleigh, plaintiff's symptoms worsened to an extent greater than when she had initially sought medical treatment. Plaintiff's condition had improved but in the Fall of 1999, plaintiff developed severe back pain and radiation into her left leg. Plaintiff sought chiropractic treatment in Raleigh from Dr. Brian Adams who referred her to Dr. Daljit Buttar, a neurologist and pain specialist.
12. On January 6, 2000, plaintiff presented to Dr. Buttar complaining of low back pain and left leg pain. Plaintiff gave a history of lifting the patient on November 2, 1998 and of her worsening symptoms in the Fall of 1999. On January 17, 2000, plaintiff underwent an EMG, which revealed no nerve damage, and a MRI, which revealed degenerative disc disease at L4-L5 and a central subligamentous protrusion with possible extruded fragments and impingement of L-5 at the nerve root. Dr. Buttar treated plaintiff conservatively with medication, epidural injections and physical therapy. Plaintiff continued to experience back and left leg pain and numbness which ebbed and flowed. On August 17, 2000, Dr. Buttar noted that plaintiff had been able to be pain free for several months but had recently had a recurrence of back pain. However, physical therapy notes during this period of time indicate that plaintiff continued to complain of pain throughout and had not been pain free.
13. Dr. Buttar told plaintiff that there was nothing else that he could do for her and that he did not recommend surgery. He limited plaintiff's activities to limited stooping, bending and no lifting over greater than 25 pounds.
14. Dr. Buttar was of the opinion that plaintiff's disc protrusion and back pain for which he treated her was caused by something which happened in the Fall of 1999 and not her original injury. Dr. Buttar was also of the opinion that plaintiff did not need surgery. Dr. Buttar based much of his opinion on the fact that plaintiff was able to be pain free during certain periods and this assumption is not adequately supported by the facts.
15. Plaintiff continued to experience pain after her August 17, 2000 visit with Dr. Buttar when he told her she would have to learn to live with the chronic pain. On October 2, 2000, plaintiff presented to Dr. Scott M. McCloskey, a neurosurgeon, complaining of back and left leg pain after a work injury on November 2, 1998 at Blowing Rock Hospital when a patient had fallen and she had tried to lift her. Plaintiff indicated that there was an onset of back pain at the time and in subsequent days it worsened. Plaintiff indicated that thereafter her pain had continued since that time but had waxed and waned.
16. On October 5, 2000, plaintiff underwent a lumbar myelogram which revealed compression of the nerve on the left between L4-L5 and which was consistent with a disc rupture. Thereafter, a CAT scan was performed and the results were consistent with a disc rupture at L4-L5 to the left. Dr. McCloskey diagnosed plaintiff with a herniated disc at L4-L5 on the left causing left leg pain, numbness and weakness and recommended surgery. Dr. McCloskey was further of the opinion that he, as a neurosurgeon, was better able to evaluate plaintiff's need for surgery than was Dr. Buttar, a neurologist.
17. On November 2, 2000, plaintiff underwent a disckectomy at Frye Regional Medical Center performed by Dr. McCloskey. Plaintiff's operation revealed a significant rupture. Plaintiff's continues to treat with Dr. McCloskey and by February 2, 2001 retained a 15% permanent partial impairment of the back. At that time, Dr. McCloskey was of the opinion that plaintiff is not capable of returning to her previous employment at defendant-employer and needs a job which involves no prolonged sitting or standing, where she can sit or stand at will with no lifting of greater than 30 to 35 pounds and no excessive twisting or turning.
18. Dr. McCloskey was of the opinion to a reasonable degree of medical certainty that plaintiff's medical conditions for which he treated her were a result of her November 2, 1998 lifting incident and resulting injury. Dr. McCloskey was of the opinion that the events following plaintiff's November 2, 1998 lifting incident and the progression of her condition along with the records of the various treating doctors are consistent with plaintiff injuring her disc at the time she was lifting the patient on November 2, 1998 with subsequent herniation of that nucleus perhaps on a later date but still as a natural result of the lifting incident and resulting injury.
19. Dr. McCloskey was of the opinion that plaintiff was unable to work from the first visit with him on October 2, 2000.
20. On November 2, 1998, plaintiff sustained a compensable specific traumatic incident of the work assigned resulting in injury to her lower back and pain in her lower back and lower extremities.
21. As a direct and proximate result of the November 2, 1998 compensable specific traumatic incident and as a natural result thereof, plaintiff sustained a herniated disc at L4-L5 on the left causing left leg pain, numbness and weakness.
22. All medical treatment which plaintiff received from Dr. DeVergiliis, Dr. Fidler, Dr. Adams, Dr. Buttar and Dr. McCloskey as well as physical therapy and other treatments which they prescribed was reasonably designed to effect a cure, provide relief and lessen disability.
23. Plaintiff voluntarily removed herself from the employment of defendant-employer as of April 7, 1999.
24. As of October 2, 2000 it is clear that plaintiff was no longer able to perform any work due to her pain caused by her ruptured disc. From October 2, 2000 and continuing, as a direct and proximate result of her compensable injury, plaintiff was unable to engage in activities required by her former job. As a direct and proximate result of plaintiff's compensable injury, plaintiff is entitled to temporary total disability compensation at the rate of $474.67 per week for the period from October 2, 2000 and continuing as well as for November 7, 14, 15, 16, 1998 and December 4, 5, 6, 12, 13 and 14, 1998 when plaintiff was out of work while employed with defendant-employer.
25. On November 21, 22, 23, 28, 29 and 30, 1998 and December 19, 20, 21, 26, 27 and 28, 1998, as a direct and proximate result of her compensable November 2, 1998 injury, plaintiff was unable to earn the same wages as that which she was earning on November 2, 1998 in the same or in any other job and indeed earned a diminished wage. As a direct and proximate result of plaintiff's compensable injury, plaintiff is entitled to temporary partial disability compensation at the rate of 66 2/3% of the difference between her average weekly wages on November 2, 1998 and the average weekly wage which she was able to earn on these dates.
26. Plaintiff's notice to defendant-employer of her injury on November 2, 1998 was timely.
 ***********
Based on the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On November 2, 1998, plaintiff sustained a compensable specific traumatic incident of the work assigned resulting in injury to her lower back and pain in her lower back and lower extremities. N.C.G.S. §97-2.
2. As a direct and proximate result of her November 2, 1998 compensable specific traumatic incident and as a natural result thereof, plaintiff sustained a herniated disc at L4-L5 on the left causing left leg pain, numbness and weakness. N.C.G.S. § 97-2.
3. All medical treatment which plaintiff received from Dr. DeVergiliis, Dr. Fidler, Dr. Adams, Dr. Buttar and Dr. McCloskey as well as physical therapy and other treatments which they prescribed was reasonably designed to effect a cure, provide relief and lessen disability and plaintiff is entitled to have defendants provide the same. N.C.G.S. § 97-25.
4. Plaintiff voluntarily removed herself from the employment of defendant-employer as of April 7, 1999. N.C.G.S. § 97-2.
5. As of October 2, 2000, plaintiff was no longer able to perform any work due to pain caused by her ruptured disc. From October 2, 2000 and continuing, as a direct and proximate result of her compensable injury, plaintiff was unable to engage in activities required by her former job. As a direct and proximate result of plaintiff's compensable injury, plaintiff is entitled to temporary total disability compensation at the rate of $474.67 per week for the period from October 2, 2000 and continuing and for the following dates: November 7, 14, 15, 16, 1998 and December 4, 5, 6, 12, 13 and 14, 1998. N.C.G.S. § 97-29.
6. On November 21, 22, 23, 28, 29 and 30, 1998 and December 19, 20, 21, 26, 27 and 28, 1998, as a direct and proximate result of her compensable November 2, 1998 injury, plaintiff was unable to earn the same wages as that which she was earning on November 2, 1998 in the same or in any other job and indeed earned a diminished wage. N.C.G.S. §97-30.
7. As a direct and proximate result of plaintiff's compensable injury, plaintiff is entitled to temporary partial disability compensation at the rate of sixty-six and two-thirds of the difference between her average weekly wage on November 2, 1998 and the average weekly wage which she was able to earn on these dates. N.C.G.S. §97-30.
8. Plaintiff is entitled to all reasonably necessary medical treatment which tends to effect a cure, provide relief or lessen the period of disability for expenses incurred by plaintiff as a result of her compensable traumatic incident, subject to the limitations of N.C.G.S. § 97-25.1. N.C.G.S. § 97-25; N.C.G.S. § 97-25.1.
9. Plaintiff's notice to defendant-employer of her injury on November 2, 1998 was timely. N.C.G.S. § 97-22.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission adopts and affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. For her compensable specific traumatic incident, defendant shall pay temporary total disability compensation to plaintiff at the rate of $474.67 per week from October 2, 2000 and continuing. Portions of this amount have accrued and shall be paid in a lump sum. This amount shall be paid subject to an attorney's fee contained in Paragraph 3.
2. For her compensable specific traumatic incident, defendant shall pay temporary partial disability compensation to plaintiff at the rate of sixty-six and two-thirds of the difference between her average weekly wage on November 2, 1998 and the average weekly wage which she earned on November 21, 22, 23, 28, 29 and 30, 1998 and December 19, 20, 21, 26, 27 and 28, 1998. This amount has accrued and shall be paid in a lump sum. This amount shall be subject to an attorney's fee contained in Paragraph 3.
3. A reasonable attorney's fee of 25% of the compensation due under Paragraphs 1 and 2 of this Award is approved for plaintiff's counsel and shall be paid by defendant by deducting from that sum and paid directly to plaintiff's counsel.
4. Defendant shall pay for all reasonably necessary medical treatment which tends to effect a cure, provide relief or lessen the period of disability for expenses incurred by plaintiff as a result of her compensable traumatic incident, subject to the limitations of N.C.G.S. § 97-25.1.
5. Defendant shall pay the costs.
This the ___ day of May 2002.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/____________________ BERNANDINE S. BALLANCE COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN